Filed 7/30/26  P. v. Sandoval CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MATEO JULIAN SANDOVAL,<br><br>    Defendant and Appellant. | A174472<br><br>(Mendocino County Super.<br>Ct. No. 25CR07325) |

Pursuant to a negotiated disposition, defendant Mateo Julian Sandoval entered pleas to evading a peace officer and misdemeanor resisting a peace officer, and the trial court placed him on two years' probation.

On appeal, defendant challenges as unreasonable four terms of his probation that relate to gang activity, and he argues that one of the gang terms is also unconstitutionally vague.  The Attorney General responds that gang terms are reasonably related to preventing future criminality in this case, but he agrees probation condition number 48 should be modified.

We will modify probation condition number 48 and otherwise affirm.

**FACTS AND PROCEDURAL HISTORY**

The Mendocino County District Attorney charged defendant with evading a peace officer, a felony (Veh. Code, § 2800.2, subd. (a); count 1) and resisting, obstructing, and delaying a peace officer, a misdemeanor (Pen. Code, § 148, subd. (a)(1); count 2).  The parties reached a plea agreement,

1

under which defendant pleaded no contest to both charges in exchange for a suspended three-year sentence and two years of probation.

At the plea hearing, the prosecutor stated the following factual basis for defendant's plea: "[O]n March 27th, 2025, Ukiah Police Department Officer Chen was on patrol. · He did observe the defendant driving a vehicle at a speed that he believed was unsafe for conditions. He did pull over the defendant here in Mendocino County in Ukiah, and he requested the defendant exit his vehicle to perform standardized field sobriety tests. [¶] The defendant indicated he would not be exiting his vehicle, and after some conversation with the officer, he then shifted his vehicle into drive and accelerated away from the officer. The officer watched him as he drove around the CVS parking lot, making a loop, and then exiting onto Pomeroy Street. [¶] As he was exiting, the officer observed him nearly crash into the back of Sergeant Chaney's marked patrol vehicle. He then observed the defendant driving away at a high rate of speed. He noted that[,] as it was raining presently, the speed the defendant was driving was unsafe based upon his training in high-speed driving as part of the POST academy. All this was in the county of Mendocino." (It is not disputed that defendant's current convictions are not gang related.)

The Mendocino County Probation Department's presentence investigation report and recommendation (probation report) documented defendant's criminal history. Defendant, then 29 years old, had four prior felony convictions and one prior misdemeanor, and "Despite his young age, his criminal record spans more than a decade and includes offenses such as disturbing the peace (with gang enhancement), possession of a firearm or ammunition by a felon, and two prior evading charges, one of which included a gang enhancement." Defendant had been placed on formal probation with

2

gang terms in Sonoma County in 2015, he had served two state prison terms beginning in 2016 and again in 2019, and he was discharged from post-release community supervision in 2023.

The probation report recommended the court "impose gang terms" for defendant's probation, explaining: "During the PSI [presentence investigation] interview, [defendant] admitted he is a documented Norteño gang member. In addition, Probation reviewed prior PSI reports from Sonoma County, which outlined his long-standing involvement with the Norteño criminal street gang, reportedly beginning when he was just 14-or-15 [*sic*] years old. Notably, his 2014 and 2015 charges included gang enhancements. Those same reports also indicated law enforcement had documented multiple photographs of the defendant displaying gang hand signs, and he had previously been found in possession of gang-related indicia. Moreover, his 2019 PSI notes jail incidents in which the defendant was involved in gang-related physical altercations occurring in 2018. Based on the above, we believe the imposition of gang terms is reasonably related to preventing future criminality."

At the sentencing hearing, defendant's attorney objected to the recommended gang terms stating, the "current case has nothing to do with gangs," defendant's "rap sheet does not show gang involvement," and the attorney did not "have access to the Sonoma County report."[1] She

---

[1] On appeal, defendant does not dispute the facts stated in the probation report. He does not dispute that his criminal history includes convictions with gang enhancements. We also note that defendant makes no claim of error based on his attorney not having access to the prior Sonoma County presentence investigation reports that were described in the probation report.

3

acknowledged that defendant "did self-identify" as a documented gang member, but she stated, "I believe he's be[en] out of that lifestyle for a while."

The trial court imposed the recommended gang terms, finding "there is reasonable information, reliable information, contained in the presentence report that indicated to this court that having gang terms would help and are reasonably related to future criminality and would help with the reformation and rehabilitation of Mr. Sandoval." The court noted defendant stated he was a documented Norteño gang member and "didn't say he was a dropout" and he previously had been on probation in Sonoma County with gang terms.

Defendant stated he was "a family man now," and he was "trying to get custody and do what I have to do."[2]

The gang-related probation conditions provide:

"47. You shall not be an active participant of any gang, act in furtherance of, in association with or for the benefit of any gang.

"48. You shall not associate with any person known to you as a gang member, and you shall not frequent any area where gang members are known to congregate, or areas known for gang-related activity.

"49. You shall not wear or possess any clothing, or items, or display any hand signs with gang significance, or which are indicia of gang membership (ie colors, symbols, insignias, numbers, monikers, patterns, etc.) known to be such, as may be identified as such by law enforcement.

"50. You shall not obtain any new gang-related tattoos, brands, burns, piercing, or voluntary scarring; and shall permit photographing of all tattoos that exist to the date of this order."

_____

[2] The probation report noted that defendant had a two-year-old from a prior relationship, and there were "ongoing child custody proceedings."

4

**DISCUSSION**

A.    *The Imposition of Gang Terms in General*

    1.    <u>Applicable Law and Standard of Review</u>

" 'Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation.  [Citation.]  The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions.  [Citations.]  The primary goal of probation is to ensure "[t]he safety of the public . . . through the enforcement of court-ordered conditions of probation."  (Pen. Code, § 1202.7.)'  [Citation.]  Accordingly, the Legislature has empowered the court, in making a probation determination, to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer. . . .'  (Pen. Code, § 1203.1, subd. (j).)"  (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).)  "If a defendant believes the conditions of probation are more onerous than the potential sentence, he or she may refuse probation and choose to serve the sentence."  (*Ibid*.)

We review a probation "condition for abuse of discretion, that is, for an indication that the condition is 'arbitrary or capricious' or otherwise exceeds the bounds of reason under the circumstances."  (*Olguin, supra*, 45 Cal.4th at p. 384.)

Under the three-prong test of *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to

5

conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Id.* at p. 486.) The *Lent* "test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Olguin, supra,* 45 Cal.4th at p. 379.) Accordingly, "even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*Id.* at p. 380 [probation term requiring defendant to notify probation about the presence of pets was valid even though unrelated to the conviction of driving under the influence of alcohol and pet ownership is not criminal because the pet notification condition was "reasonably related to the supervision of defendant and hence to his rehabilitation and potential future criminality"].)

    2.    <u>Analysis</u>

Defendant contends the gang terms—probation condition numbers 47 through 50—are unreasonable under the three-prong test of *Lent*. The parties agree these terms are not related to defendant's current convictions and the conduct prohibited is not itself criminal. The only dispute is whether the terms are " 'reasonably related to future criminality.' " (*Lent, supra,* 15 Cal.3d at p. 486.)

Defendant argues these probation conditions "are not reasonably related to future criminality because the evidence of Mr. Sandoval's former gang membership is outdated and too attenuated from his present circumstances to indicate a risk of future gang activity." We are not persuaded. The record shows defendant became involved with the Norteños when he was 14 or 15 years old, he was convicted of crimes with gang enhancements when he was around 18 and 19 years old, and he was involved

in more than one gang-related physical altercation in 2018 when he was around 21 or 22 years old.  In his recent interview with the probation department, "defendant stated he *is* a documented Norteño gang member" and "declined to provide further details" at "the advice of his attorney." (Italics added.)  Thus, defendant's documented gang involvement began at a young age, involved criminal conduct and physical altercations, and spanned many years; and, notwithstanding defendant's statement that he is a family man now, the trial court reasonably observed there was no evidence he has definitively disassociated from the Norteños.  We easily conclude the trial court acted within its discretion in determining that gang terms were "fitting and proper . . . generally and specifically for the reformation and rehabilitation of the probationer" (Pen. Code, § 1203.1, subd. (j)) on the facts of the case.

B.    *Probation Condition Number 48*

Probation condition number 48 provides: "You shall not associate with any person known to you as a gang member, and you shall not *frequent* any area where gang members are known to congregate, or *areas known for gang-related activity*."  (Italics added.)

Defendant argues the terms "frequent" and "areas known for gang-related activity" are unconstitutionally vague.[3]  (See *In re H.C.* (2009) 175 Cal.App.4th 1067, 1072 [probation condition " '[t]hat the minor not frequent

---

[3] "Under the void for vagueness doctrine, based on the due process concept of fair warning, an order ' "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.]  The doctrine invalidates a condition of probation ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' " (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*)

any areas of gang related activity' " was objectionable because the verb
" 'frequent' " "would be especially challenging to understand"; " 'frequent' "
should be replaced with "visit"]; *Victor L.*, *supra*, 182 Cal.App.4th at pp. 913–
914 [probation condition prohibiting minor from being in " 'areas known . . .
for gang-related activity' " was "impermissibly vague in that it does not
provide notice of what areas [the minor] may not frequent or what types of
activities he must shun"].)

In *Victor L.*, we considered a similar probation condition that required
the minor "to stay away from 'areas known by [him] for gang-related
activity.' " (182 Cal.App.4th at p. 913.)  We found "the condition as written,
without further specificity, [wa]s not sufficiently clear to put [the minor] on
notice of the prohibited conduct." (*Id.* at p. 916.)  However, we declined to
remand the matter to the trial court to reform the probation condition,
observing, "[t]o require the judge in each probation order to specify exactly
which areas are forbidden to the individual gang member would impose an
undue burden on the judiciary." (*Id.* at p. 917.)  Instead, we "elect[ed] to
modify the condition of probation to provide for the probation officer to notify
[the minor] of the areas he must avoid," as this approach was "implied in law
in order to avoid a claim of unconstitutional vagueness." (*Id.* at pp. 917–918.)
We modified the probation term to read in relevant part, " 'The Minor shall
not be in . . . areas known by Minor for gang-related activity (or specified by
his probation officer as involving gang-related activity)." (*Id.* at pp. 931–932,
italics omitted.)

In this case, the Attorney General agrees with defendant that the
current language of probation condition number 48 is vague and urges that
we modify the condition as was done in *Victor L.*  In his reply, defendant
proposes a modification of probation condition number 48 that deletes the

word "frequent" and substitutes the word "visit" and that specifies the prohibited areas includes those "designated by your probation officer."

We will modify the condition to read: "You shall not associate with any person known to you as a gang member, and you shall not visit any area where gang members are known by you to congregate or any area known by you for gang-related activity (or as designated by your probation officer), unless you have prior authorization from your probation officer." This modification comports with *Victor L.*, *supra*, 182 Cal.App.4th 902, and *In re H.C.*, *supra*, 175 Cal.App.4th 1067.

## DISPOSITION

Probation condition number 48 is modified to read, "You shall not associate with any person known to you as a gang member, and you shall not visit any area where gang members are known by you to congregate or any area known by you for gang-related activity (or as designated by your probation officer), unless you have prior authorization from your probation officer." In all other respects, the judgment is affirmed.

_____
Miller, J.

WE CONCUR:


_____
Stewart, P. J.


_____
Desautels, J.


A174472, *People v. Sandoval*

10